IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MICHAEL RAY COLLIER )
)
v. ) No. 3:20-0142
)
KILOLO KIJAKAZI[1] )
Commissioner of Social Security )

**To:** The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 29), to which Defendant has filed a response. (Docket No. 30.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 31.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 6.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 29) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

# I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on November 26, 2012. (*See* Transcript of the Administrative Record (Docket No. 26) at 99-100).[2] He alleged that he was unable to work, as of the alleged disability onset date of May 30, 2012, because of depression, diabetes, fibromyalgia, neuropathy, problems with his shoulders and back, carpal tunnel syndrome, and high blood pressure. (AR 151.) The applications were denied initially and upon reconsideration. (AR 99-100, 143-44.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Scott Shimer on February 5, 2015. (AR 10-12.) The ALJ denied the claim on April 16, 2015. (AR 9-11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 3, 2016 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed suit in this Court on August 5, 2016. (AR 1063-64.)

On May 14, 2018, the presiding District Judge reversed the Commissioner's decision and remanded the case to the Commissioner for further consideration. *See Collier v. Comm'r of Soc. Sec.*, No. 3:16-cv-2077, 2018 WL 2193965 (M.D. Tenn. May 14, 2018). However, on September 30, 2016, while the case was still pending, Plaintiff filed additional applications for DIB and SSI that, following another administrative hearing on March 2, 2018, were denied by an ALJ on June 28, 2018. (AR 1035, 1074.) On January 30, 2019, the Appeals Council granted Plaintiff's request for review of the second ALJ's decision, consolidated the case with the case remanded by the District Judge, and remanded both cases to an ALJ for further consideration. (AR 1072-75.)

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

On October 10, 2019, Plaintiff appeared for an additional administrative hearing before ALJ Robert Martin. (AR 998.) On December 18, 2019, ALJ Martin denied the consolidated claims. (AR 970-72.) Plaintiff states that he "bypassed written exceptions … once the Appeals Council did not review the claim on its own" (Docket No. 29-1 at 5), which renders ALJ Martin's decision the final decision of the Commissioner. (AR 971.) Plaintiff then filed the instant suit in this Court, which has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision, issued on December 18, 2019, included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since May 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; diabetes mellitus; osteoarthritis; history of right shoulder surgery; mild bilateral carpal tunnel syndrome status post bilateral carpal tunnel releases; degenerative disc disease; Raynaud's syndrome; history of pseudoseizure; cognitive disorder; major depressive disorder; anxiety; and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to lifting, carrying, pushing, and pulling ten pounds frequently and twenty pounds occasionally; sitting for six hours in an eight-hour workday; standing/walking six hours in an eight-hour workday; occasionally climbing of ramps and stairs but never ladders, ropes, or scaffolds;

occasional stooping, crouching, kneeling, crawling, and balancing; no overhead reaching with the dominant right upper hand extremity; avoiding concentrated exposure to extreme cold, work around hazardous machinery, moving parts, vibrations, and work at unprotected heights; and no operating heavy machinery or driving an automobile for work purposes. Mentally, the claimant is limited to simple, routine, repetitive tasks and simple work-related decisions, and he can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day. He can interact occasionally with supervisors and coworkers but should have no interaction with the general public. His interactions should be brief, job-related, and task-focused, which is defined as limited to speaking to, serving, or receiving information from supervisors and coworkers. He will work better with things than people. He can adapt to occasional changes in the workplace. Work instructions should either be delivered orally or by short demonstration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 27, 1977 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 976-90.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity,

5

he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

**B. The ALJ's Five -Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform a range of light work with express limitations to account for his severe impairments, and that

6

considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 976-90.)

### C. Plaintiff's Assertion of Error

Plaintiff presents one assertion of error: that the RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of the treating and examining providers. (Docket No. 29-1 at 18.) Plaintiff therefore requests that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 26.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

### The RFC Determination.

Plaintiff asserts that the ALJ's improper evaluation of the opinions provided by multiple sources led to a mental RFC assignment that is not supported by substantial evidence.

7

Specifically, Plaintiff alleges that the ALJ erred by discounting the opinions of James Hebda, Ph.D.—whom Plaintiff describes as his "treating physician" (Docket No. 29-1 at 22)—and consultative examiner Paul Brown, Ph.D., and faults the ALJ for according greater weight to the opinions provided by non-examining state agency consultants.

Applications for DIB filed prior to March 27, 2017—such as the ones at issue here—are subject to the regulatory analysis set forth in 20 C.F.R. § 404.1527.[3] Pursuant to this regulation, the ALJ is required to weigh any medical opinion concerning a claimant's functioning by considering a variety of factors that include the nature and length of the relationship between the provider and the claimant, the supportability and consistency of the opinion in question, and the specialization of the opining provider. *Id*. § 404.1527(c). The regulation also includes the so-called "treating physician rule," which directs the ALJ to give controlling weight to a treating source's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. § 404.1527(c)(2). If the ALJ declines to give controlling weight to a treating source's opinion, he must provide "good reasons" for this decision that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011) (citing SSR 96-2p, 1996 WL 374188, at *5 (1996)).

The Court turns to a review of the opinion evidence beginning with Dr. Hebda. Over the course of seven visits between January and May of 2013, Dr. Hebda performed a series of evaluations of Plaintiff identified as follows: mental status exam, Wechsler Adult Intelligence Scale-4, Halstead-Reitan Test Battery, Wechsler Memory Scales-3, Wide Range Achievement

---

[3] The corresponding regulation for SSI applications is contained in 20 C.F.R. § 416.927. For ease of reference, the Court will refer only to the relevant DIB regulatory language.

8

Test-4, Beck Inventories, and Activities of Daily Living Questionnaire. (AR 748.) In June 2013, Dr. Hebda produced a medical source statement ("MSS") in which he opined that Plaintiff suffered from "marked" limitations—defined as a "serious limitation" indicating "substantial loss in the ability to effectively function"—in seven categories of mental functioning: understanding and remembering complex instructions; carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with the public; interacting appropriately with supervisors; interacting appropriately with coworkers; and responding appropriately to usual work situations and changes in a routine work setting. (AR 753-54.) When prompted to identify the "factors" supporting these conclusions, Dr. Hebda wrote the following: "Moderate depression, [] severe reading and written language skills (3rd-4th grade level), and deficits in processing speed impair his ability to make adjustments in [a] work setting." (AR 754.) When asked to describe any other "capabilities" affected by Plaintiff's mental impairments, Dr. Hebda responded that "moderately impaired executive functions reduce his ability to analyze, plan, organize and complete tasks in a timely manner." (AR 754.) Dr. Hebda referenced the "Halstead-Reitan Test Battery" to support this assessment, although he did not cite any findings from such testing. (AR 754.)

The ALJ accorded "little weight" to Dr. Hebda's MSS for multiple reasons. First, the ALJ emphasized that although Dr. Hebda was considered a treating source under 20 C.F.R. § 404.1527(a)(2), he had seen Plaintiff for only five months in 2013. (AR 988.) The ALJ additionally highlighted "unremarkable" findings in records documenting Plaintiff's treatment at the Mental Health Cooperative following Plaintiff's treatment with Dr. Hebda, including improvement in his mood, anxiety, and depression. (AR 988.) The ALJ also noted Plaintiff's testimony during the administrative hearing that he was fired from his most recent job due to

9

absenteeism caused by physical pain rather than any problems interacting with coworkers. (AR 988.) Finally, the ALJ determined that the MSS was "questionable" and "inconsistent" given that Dr. Hebda assigned several "marked" restrictions with respect to Plaintiff's vocational functioning but found only "moderate" impairment in Plaintiff's ability to perform activities of daily living, function socially, concentrate, and adapt generally. (AR 985.)

Plaintiff first objects to the ALJ's decision to discount Dr. Hebda's opinion based on the limited period of time that he evaluated Plaintiff—five months in 2013—given that the ALJ accorded great weight to opinions from state agency consultants who never examined Plaintiff. Defendant counters by emphasizing a Mental Health Cooperative provider's note from October 2014 in which Plaintiff admitted that he employed Dr. Hebda's services "to assist with obtaining disability." (AR 1215.) Plaintiff concedes in his brief that he saw Dr. Hebda on a limited basis "for a neuropsychological evaluation" (Docket No. 29-1 at 8), which is confirmed both by the accompanying report completed by Dr. Hebda (AR 748) ("Michael Collier … was self-referred for neuropsychological evaluation.") and Plaintiff's own testimony:

> ALJ: [D]id you ever see [Dr. Hebda] other than that one time?
>
> Plaintiff: All he [did] was an evaluation on me.
>
> ALJ: Okay.
>
> Plaintiff: And being as he was so far from home, he recommended [that I] go to the Mental Health Co-op in Dickson, because they took my insurance.
>
> ALJ: Okay. So he only saw you for that evaluation.
>
> Plaintiff: Right.

(AR 1007.) It would not be unreasonable to interpret such evidence, taken together, as an attempt by Plaintiff to procure a favorable opinion in support of his applications, which generally

10

prevents the subject provider from enjoying treating source status. *See* 20 C.F.R. § 404.1527(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). Nonetheless, the ALJ found that Dr. Hebda qualifies as a treating source under the regulation, which means that the ALJ was required to set forth good reasons for giving the MSS little weight. For the reasons that follow, the Court concludes that the ALJ did so.

While Plaintiff's initial objection certainly seems logical—a five-month examination period would in all likelihood provide a more accurate assessment of a claimant's impairments than no examination at all—the ALJ's reasoning is not necessarily amiss. The regulation indeed directs the ALJ to evaluate the depth of the relationship between the claimant and the treating source. *See* 20 C.F.R. § 404.1527(c)(2)(i)-(ii) (noting that the Commissioner will consider the length of the treating period and "look at the treatment the source has provided" in assessing the "nature and extent of the treatment relationship"). However, the ALJ's simple declaration that "Dr. Hebda only met with the claimant between January and May of 2013" (AR 988), does not, by itself, represent a good reason for discounting the MSS. *See Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) ("An ALJ 'must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). The ALJ acknowledged that Dr. Hebda's role was confined to "evaluation" as opposed to providing significant treatment, *see* 20 C.F.R. 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you … with medical treatment *or evaluation* and who has, or has had, an ongoing treatment relationship with you.") (emphasis added), and

11

Dr. Hebda's report indicates that he utilized seven different "procedures" in measuring Plaintiff's mental deficits. (AR 748.) Such a range of mental testing would seem to outweigh the need for an arbitrarily longer period of evaluation.

Nevertheless, the Court finds the additional reasons articulated by the ALJ for according little weight to Dr. Hebda's opinion are supported by substantial evidence. Plaintiff minimizes the significance of his mental health treatment following Dr. Hebda's evaluation, but the records documenting such treatment do in fact contain relatively minor mental findings that weigh against the severe restrictions proposed in the MSS. During a visit at the Mental Health Cooperative on November 2, 2017, Plaintiff was described as "friendly … with a broad affect" and reported improvement in his mental health symptoms. (AR 1326.) The same description was used one month later during an office visit where Plaintiff reported that his mental symptoms were stable and he was "getting out of the house." (AR 1325.) In January 2018, Plaintiff presented with a stable mood, "minimal" anxiety, and grossly intact attention and concentration, while reporting that his medications were working well. (AR 1321-22.) In June 2018, a mental status examination revealed "linear, logical and goal directed" thought processes, a calm and cooperative presentation, and "fair" insight and judgment. (AR 1196.)

Plaintiff's symptoms continued to improve over time. In October 2018, providers described his mood as "engaged" while mental health measurements demonstrated "moderate" impairment in his overall functioning (AR 1189), which is congruent with every opinion in the record except Dr. Hebda's MSS. Plaintiff also reported that his medication continued to work and that his symptoms were "well-improved." (AR 1187.) Notably, Plaintiff reported to providers during this visit that he was able to perform the following activities "a good bit of the time": resolve problems and set expectations with others, appear on time for appointments and

meetings, abide by community norms and respect the rights of others, and "get along with neighbors, coworkers, or others." (AR 1191.) He further reported that he was able to exhibit appropriate behavior towards others "most of the time." (AR 1191.)

In 2019, Plaintiff continued to report that his mental symptoms were stable and his medication was working well. (AR 1178-80.) On February 21, 2019, his treating provider's description was:

> Michael has been making significant progress with coping skills, communication skills, anger, aggression, and self care since starting therapy with us. He has stopped long term use of opioids and this has helped to improve his overall mood and family relationships. He says that he feels better, clearer … He says that things are going well with his wife and his older son Josh and step-son Harley live with him. He says that he feels that the [medications] are working fairly well.

(AR 1175.) In addition to discussing this treatment in the administrative opinion, the ALJ highlighted the repeated findings during mental examinations showing "normal thought processes and thought content, intact memory and concentration, and fair insight and judgment." (AR 986, 1203, 1310, 1313, 1322-23, 1327.) Such findings stand in contrast to the severe mental restrictions recommended by Dr. Hebda and constitute "good reasons" for discounting his opinion. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that [the treating physician's] medical opinion … was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion.").

The ALJ also appropriately cited Plaintiff's hearing testimony that *physical* pain, and not mental or social impairment, prevents him from continuing to work. (AR 988, 1108-09.) Moreover, Plaintiff cited only a lack of financial resources in response to questions about his lack of social activity. (AR 1109.) And notwithstanding such testimony, he acknowledged that he attended church services every week, during which he experiences physical pain but no social or mental problems. (AR 1010.) While the Court acknowledges the discomfort caused by such

13

physical symptoms, this does not undermine the ALJ's assessment of Plaintiff's mental functioning, while the ALJ's discussion of the absence of testimony describing significant mental symptoms bolsters the decision to discount Dr. Hebda's opinion.

The ALJ's additional reason for according little weight to Dr. Hebda's opinion based on purported internal inconsistencies is somewhat less compelling. Dr. Hebda's finding that Plaintiff is "marked[ly]" impaired in his vocational functioning was, according to the ALJ, inconsistent with his finding of "moderate" impairment in daily living activities, social functioning, concentration, and general adaptation. (AR 751, 977, 985.) Plaintiff notes that the latter observations appear to represent general statements that are independent of the specific functional limitations delineated later in Dr. Hebda's proposed RFC and cannot serve as a basis for finding the opinion internally inconsistent. (Docket No. 29-1 at 20.) However, even if this premise is accepted, the ALJ additionally highlighted Plaintiff's consistent church attendance, an ability to shop, and interactions with friends as countervailing evidence to Dr. Hebda's finding of "marked" limitations in Plaintiff's ability to interact with coworkers and the general public. (AR 754, 977.) The ALJ also referenced Plaintiff's hearing testimony that he has difficulty interacting with others in a work setting only when supervisors are especially "disrespectful," and that he does not struggle with following directions or adhering to general employment decorum. (AR 988, 1016-17.) Such testimony further undermines the severity of Dr. Hebda's proposed limitations on social interaction and provides additional support for the ALJ's decision to discount the MSS.

The Court similarly finds no error in the ALJ's assessment of Dr. Brown's opinion completed as part of the March 2013 consultative psychological evaluation. Following a clinical interview and mental examination, Dr. Brown diagnosed Plaintiff with "Adjustment Disorder

14

with moderate depressed mood" and "Estimated low average range of intellectual functioning." (AR 595.) Dr. Brown concluded that Plaintiff had "mild to moderate" limitations in "understanding and remembering," as well as "moderate" limitations with respect to "sustaining concentration and persistence," "interacting with others," and "adapting to changes and requirements." (AR 594-95.)

The ALJ gave "some weight" to Dr. Brown's opinion. Like Dr. Brown, the ALJ concluded that Plaintiff suffers from "moderate" limitations in maintaining concentration, interacting with others, and adapting. (AR 977.) The ALJ's additional finding of "moderate" limitation in understanding and remembering is slightly more restrictive—and therefore more favorable to Plaintiff—than Dr. Brown's finding of only "mild to moderate" limitation in the same area of functioning. (AR 977.) However, the ALJ rejected Dr. Brown's assertion that Plaintiff "does not appear capable of performing simple routine activities on a consistent basis over longer periods of time." (AR 594-95, 987-88.) The ALJ dismissed this assertion based on Plaintiff's testimony that physical pain—as opposed to mental restrictions—led to the termination of his employment in 2019, and on Plaintiff's separate report to a provider that he actually quit his job "because of dust." (AR 987.) The ALJ further cited the relatively mild mental exam findings from Plaintiff's treatment at the Mental Health Cooperative as evidence that Plaintiff could in fact perform simple routine activities on a consistent basis. (AR 987-88.)

Plaintiff contests the ALJ's conclusion by citing hearing testimony in which he asserted that his son frequently "helped him" on job sites, and that he needed "extra breaks" throughout the workday. (Docket No. 29-1 at 24.) Yet Plaintiff's testimony in this regard again focused almost exclusively on pain caused by physical discomfort and not mental symptoms. (AR 1021-25.) As an example, when Plaintiff was asked about his son's involvement at job sites, he

15

testified that his son "[did] all the heavy lifting and stuff," and that Plaintiff was physically limited to "thread[ing] the machine." (AR 1022-23.) Such testimony does not negate the evidence cited by the ALJ to discount this portion of Dr. Brown's opinion regarding mental functioning, and the ALJ was under no obligation to provide an analysis as extensive as that applied to Dr. Hebda's MSS. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (noting that the "reasons-giving requirement" under 20 C.F.R. § 404.1527(c)(2) applies only to treating sources).

Plaintiff's final contention that the ALJ erred by relying on "*remarkably* stale" opinions from two state agency psychological consultants (Docket No. 29-1 at 25) (emphasis in original) is likewise unavailing. In March 2013, Dr. Brad Williams provided the first of these two opinions, in which he opined that Plaintiff is not limited with respect to understanding or memory, moderately limited in maintaining attention and concentration for extended periods, moderately limited in his ability to complete a normal workday, moderately limited in his ability to get along with coworkers, moderately limited in his ability to respond appropriately to workplace changes, and moderately limited in his ability to set realistic goals (AR 77-78.) Dr. Andrew Phay provided the second opinion in August 2013, opining that Plaintiff is moderately limited in several areas of functioning that include: understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, completing a normal workday, interacting appropriately with the general public, accepting instructions and responding appropriately, getting along with coworkers, responding appropriately to workplace changes, and setting realistic goals. (AR 116-18.) The ALJ gave these opinions "great weight." (AR 987.)

Plaintiff does not allege any specific error in the psychological consultants' findings, which is significant given that state agency consultants are considered to be "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims[.]" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting SSR 96-6p, 1996 WL 374180, at *2 (1996)). Plaintiff instead faults the ALJ for crediting "these ancient opinions" over those offered by Drs. Hebda and Brown (Docket No. 29-1 at 26), apparently holding little regard for any evidence arising during the first 15 months following his alleged onset date of May 30, 2012. Plaintiff's characterization is especially disingenuous given that the opinion he suggests should be controlling—Dr. Hebda's MSS—was issued before Dr. Phay completed his evaluation. (AR 118, 755.) Dr. Phay in fact considered Dr. Hebda's proposed RFC as part of his opinion. (AR 111.)

Plaintiff also misconstrues the Sixth Circuit's decision in *Blakley* by arguing that the ALJ erred in crediting theses non-examining source opinions from 2013 without "indicat[ing] that he has at least considered" that the sources were not privy to records documenting Plaintiff's subsequent treatment. (Docket No. 29-1 at 25.) Plaintiff omits a key portion of the holding, however, which found reversible error where an ALJ failed to take into consideration substantial evidence of ongoing treatment with a treating source following the issuance of a non-examining opinion granted significant weight. *See Blakley*, 581 F.3d at 409 ("[B]ecause much of the over 300 pages of medical evidence reflects ongoing treatment and notes by Blakley's treating sources, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record.") (internal quotations and citation omitted). As discussed above, there is no evidence that Plaintiff underwent any treatment with Dr. Hebda, let alone a quantity of treatment following Dr. Phay's

17

August 2013 opinion that would have warranted additional discussion by the ALJ. The *Blakley* decision has no bearing on the instant matter.

It is well established that a reviewing court is not permitted to reweigh evidence or substitute its own judgment for that of the Commissioner even if there is evidence to support a claimant's position. *See Dalton v. Sec'y of Health & Human Servs.*, 908 F.2d 973 (6th Cir. 1990) ("The fact that the record may also contain substantial evidence in support of a different conclusion than that of the [Commissioner] is irrelevant.") As discussed, the Court finds that the ALJ provided adequate explanations for the weight accorded to the various opinions in the medical record, which fortifies his RFC formulation with substantial evidence. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 29) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and

Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

                        Respectfully submitted,

                        _____
                        BARBARA D. HOLMES
                        United States Magistrate Judge